UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NOV 19 2010

| | |
|---|---|
| Tuohy Furniture Corporation, | Court File No. _____ |
| Plaintiff, | *10cv4674 ADM/SRN* |
| v. | |
| Pioneer Millworks, Inc., | **COMPLAINT** |
| Defendant. | **JURY TRIAL REQUESTED** |

Plaintiff Tuohy Furniture Corporation ("Tuohy") complains of Defendant Pioneer

Millworks, Inc. ("Pioneer") as follows:

## INTRODUCTION

1.    Pioneer specializes in reclaimed wood products.  Tuohy ordered nine

reclaimed-wood tabletops from Pioneer.  Shortly after delivery, these tabletops

demonstrated serious defects.  The wood cracked and bowed.  Tuohy requested that

Pioneer remedy the defects.  Pioneer failed to do so.  By delivering defective tabletops,

Pioneer breached the parties' contract, and its warranties.  Tuohy files this suit to recover

the damages it sustained as result of the breach.

## PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff Tuohy Furniture Corporation is a Minnesota corporation with its

principal place of business in Chatfield, Minnesota.  Tuohy has designed and

manufactured furniture in Minnesota for over fifty years.  Tuohy does not manufacture

furniture or other products made with reclaimed wood.

SCANNED

NOV 1 9 2010

U.S. DISTRICT COURT ST. PAUL

3.      Defendant Pioneer Millworks, Inc. is a New York corporation.  Upon information and belief, Pioneer's principal place of business is in Farmington, New York. Upon information and belief, Pioneer also maintains facilities in McMinnville, Oregon. Upon information and belief, Pioneer specializes in reclaimed wood products and sells its products to persons and businesses worldwide.

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.      Venue is proper in this Court under 28 U.S.C. § 1391 for two reasons. First, a substantial part of the events or omissions giving rise to the claim occurred in this district.  Second, Pioneer is a resident of this district because Pioneer is subject to personal jurisdiction in this Court.

6.      Upon information and belief, in operating its worldwide business, Pioneer has continuous and systematic contact with the state of Minnesota sufficient to support general jurisdiction in this Court.

7.      This Court has specific jurisdiction over Pioneer because this suit arose out of the parties' business relationship, which provided sufficient minimum contacts.

## GENERAL ALLEGATIONS

8.      Tuohy incorporates by reference the allegations in Paragraphs 1-7.

9.      Through several intermediaries, Tuohy contracted to provide eight conference tables and one desk for its customer Grey Global Group Inc. ("Grey Group")

2

for Grey Group's new offices in New York City.[1] The tabletops were to be made of reclaimed wood. The contract price for the tables and the desk was $203,116.59. Copies of EvensonBest's Purchase Orders are attached as Exhibit A.

10. In June 2009, Tuohy ordered the nine tabletops from Pioneer (the "Tabletops"). A copy of the contract documents between Tuohy and Pioneer are attached as Exhibit B.

11. Pioneer's Terms and Conditions of Sale stated, "Guarantee: We guarantee your material to be as listed on the order confirmation, per our grade specifications. Before installation, inspect your order. If for any reason you are not satisfied with the material, please contact us as soon as possible and we will do our best to remedy the situation."

12. Tuohy had ordered similar tabletops from Pioneer in the past, without experiencing any problems.

13. With the order, Tuohy provided Pioneer with drawings of the proposed tables, including the dimensions of the tabletops and proposed bases.

14. Pioneer was to deliver the Tabletops to Grey Group's offices for incorporation into the final tables.

15. Upon information and belief, Pioneer provided other materials, such as reclaimed wood paneling and/or flooring for Grey Group's new offices.

---

[1] There are several middlemen between Tuohy and the final end-user Grey Group. The middlemen are as follows. (1) Evenson Best LLC, a furniture distributer, contracted with Tuohy for the eight tables and the desk. (2) Studios Architecture, D.C., P.C. was the designer of the Grey Group's new offices; Studios Architecture engaged Evenson Best, LLC to assist with the project. (3) Macro Consultants LLC was the project manager of the Grey Group's new office installation. For ease of understanding, all of these middlemen and Grey Group will be collectively referred to as "Grey Group."

16.     Tuohy manufactured the bases and grommets for the tables.

17.     Pioneer delivered the Tabletops in September 2009.

18.     Shortly after delivery, the Tabletops demonstrated serious defects. The wood was cracked and/or bowed.

19.     Grey Group notified Tuohy of these defects on October 5, 2009.

20.     Shortly thereafter, Tuohy informed Pioneer of the defects.

21.     Tuohy and Pioneer attempted to address the problems with the Tabletops. Pioneer suggested remedying the problems by adding steel supports. Pioneer provided Tuohy with a proposed design for a steel support system. Pioneer indicated that it could add these supports, but would charge Tuohy for doing so.

22.     Tuohy apprised Grey Group of the plan to remedy the Tabletops' problems with steel supports.

23.     On October 8, 2009, Grey Group rejected the steel supports as a permanent solution. It informed Tuohy that it believed the steel supports were a "jury rigged" solution. The Tabletops were extremely expensive and Grey Group desired a defect-free, undamaged product.

24.     Grey Group asked for new tables by the time it moved into its offices. The move-in dates were as follows: floors 5 and 6 on October 30, 2009; floor 4 on November 13, 2009; and floor 3 on November 20, 2009. Pioneer was unable to accommodate this schedule. Grey Group agreed to use the repaired tables as a temporary stopgap, until new tables could be provided.

25.     Tuohy informed Pioneer of Grey Group's decision.

4

26.   On October 12, 2009, Pioneer sent workers to Grey Group's offices to install the steel supports on one Tabletop.  The workers did not clean their workspace and failed to remedy the Tabletop's problems.  The table still bowed.  Pioneer was unable to install steel supports on the other Tabletops before Grey Group's move-in dates.

27.   Tuohy employees traveled to New York to install the steel supports.

28.   Pioneer and Tuohy agreed on a schedule for Pioneer to provide replacement tabletops (the "Replacement Tabletops").  The first Replacement Tabletops were to be delivered the week of December 10, 2009.  The second Replacement Tabletops were to be delivered on December 28 or December 29, 2009.  The third Replacement Tabletops were to be delivered on January 28 or 29, 2010.  The fourth Replacement Tabletops were to be delivered in the second week of March 2010.

29.   Pioneer required Tuohy to issue purchase orders for the Replacement Tabletops, refusing to replace the defective tabletops without additional payment.

30.   Pioneer provided four Replacement Tabletops.

31.   On January 7, 2010, Pioneer notified Tuohy that the final four Replacement Tabletops were going to be delayed.  A few weeks later Pioneer advised Tuohy of another delay.  A few weeks later Pioneer advised Tuohy of a third delay, promising delivery of the January 2010 Replacement Tabletops on April 15 and the March 2010 Replacement Tabletops at an unidentified future date.

32.   Shortly thereafter, on or about February 17, 2010, Grey Group notified Tuohy that the first four Replacement Tabletops were cracking and bowing, in one case more than a one-half inch crack developed.

5

33.     Tuohy informed Pioneer of the problems with the Replacement Tabletops.

34.     On March 1, 2010, Grey Group informed Tuohy that it rejected the Tabletops and the proposed solutions, and that it would be purchasing replacement tables elsewhere.  Grey Group arranged for Allan Weiser, an expert in the reclaimed-wood-furniture business, to examine the Tabletops.  Weiser stated that the "most basic requirement" for tabletops of this type (that the grain orientation of the planks be alternated or inverted) was not followed, and that this "in large part" caused the Tabletops' problems.  He also noted that failure to dry the wood properly or to stage the material in the appropriate moisture environment could have caused these problems.  He further stated that the bowing and cracking of the tables exceeded what would be expected when dealing with this type of product.

35.     Tuohy refunded Grey Group's deposit, in the amount of $95,674.90.

36.     Shortly thereafter, Tuohy informed Pioneer of these developments, rejected the Tabletops that had been provided, and cancelled the long-delayed final four Replacement Tabletops.

37.     As a result of these problems, Tuohy lost a similar contract with Cohn & Wolfe, a company related to Grey Group.  Pioneer was to provide tabletops to Tuohy for this contract.  But, because the Grey Group tabletops were defective, Cohn & Wolfe decided to purchase veneer tables from Tuohy instead, significantly lowering Tuohy's profits on the contract.

## COUNT I – BREACH OF CONTRACT

38.     Tuohy incorporates by reference the allegations in Paragraphs 1-37.

39.     Pioneer breached its contract with Tuohy for the manufacture and delivery of the Tabletops by delivering Tabletops that cracked, bowed, and were defective.

40.     As a proximate result of Pioneer's breach of contract, Tuohy has been damaged.

WHEREFORE, Tuohy respectfully requests that this Court enter judgment in its favor and against Pioneer and award Tuohy all actual, incidental, and consequential damages in an amount to be proven at trial, costs, interest, attorney fees, and such further relief as this Court finds just and equitable.

## COUNT II – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

41.     Tuohy incorporates by reference the allegations in Paragraphs 1-40.

42.     Pioneer impliedly warranted that the Tabletops would be merchantable, including but not limited to, that the Tabletops would pass without objection in the trade under the contract description, and would otherwise be fit for their ordinary purpose.

43.     Pioneer breached its implied warranty of merchantability to Tuohy by delivering Tabletops that cracked, bowed, did not pass without objection in the trade under the contract description, and were otherwise not fit for their ordinary purpose.

44.     As a proximate result of Pioneer's breach of its implied warranty of merchantability, Tuohy has been damaged.

WHEREFORE, Tuohy respectfully requests that this Court enter judgment in its favor and against Pioneer and award Tuohy all actual, incidental, and consequential damages in an amount to be proven at trial, costs, interest, attorney fees, and such further relief as this Court finds just and equitable.

## COUNT III – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A

## PARTICULAR PURPOSE

45.    Tuohy incorporates by reference the allegations in Paragraphs 1-44.

46.    Pioneer impliedly warranted that the Tabletops would be fit for the particular purpose for which Tuohy ordered and purchased the Tabletops.

47.    At the time of contracting, Pioneer knew or had reason to know of the particular purpose for which Tuohy was purchasing the Tabletops.

48.    At the time of contracting, Pioneer knew or had reason to know that Tuohy was relying on Pioneer's skill and judgment to furnish suitable Tabletops for inclusion in the tables for Grey Group.

49.    Pioneer breached its implied warranty of fitness for a particular purpose to Tuohy by delivering Tabletops that cracked, bowed, and were not fit for the purpose for which they were purchased.

50.    As a proximate result of Pioneer's breach of its implied warranty of fitness for a particular purpose, Tuohy has been damaged.

WHEREFORE, Tuohy respectfully requests that this Court enter judgment in its favor and against Pioneer and award Tuohy all actual, incidental, and consequential damages in an amount to be proven at trial, costs, interest, attorney fees, and such further relief as this Court finds just and equitable.

## COUNT IV – BREACH OF EXPRESS WARRANTY

51.    Tuohy incorporates by reference the allegations in Paragraphs 1-50.

52.   Pioneer provided Tuohy the following express warranty on the Tabletops:

Guarantee: We guarantee your material to be as listed on the order confirmation, per our grade specifications. Before installation, inspect your order. If for any reason you are not satisfied with the material, please contact us as soon as possible and we will do our best to remedy the situation.

53.   Tuohy relied on this express warranty.

54.   Pioneer breached its express warranty by delivering Tabletops that cracked, bowed, and were defective.

55.   As a proximate result of Pioneer's breach of its express warranty, Tuohy has been damaged.

WHEREFORE, Tuohy respectfully requests that this Court enter judgment in its favor and against Pioneer and award Tuohy all actual, incidental, and consequential damages in an amount to be proven at trial, costs, interest, attorney fees, and such further relief as this Court finds just and equitable.

## JURY DEMAND

Tuohy demands a trial by jury.

Dated: November 18, 2010

By _____
Anthony J. Novak (351106)
*Attorney for Plaintiff*
Larson King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
651.312.6571

*IN ASSOCIATION WITH*

Kevin G. Dougherty
Nicole L. Mazzocco
Attorneys for Plaintiff
900 Fifth Third Center
111 Lyon Street, NW
Grand Rapids, MI  49503
616.752.2000
*Admission Pro Hac Vice Pending

LK 1296389
4699652